UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CSMI LLC,

        Plaintiff,

    v.                               Civil Docket No. 1:24-cv-00235-SM-TSM

INTELAGARD, INC.,

        Defendant.

## FIRST AMENDED COMPLAINT

The plaintiff CSMI LLC ("CSMI") brings this First Amended Complaint against the defendant Intelagard, Inc. ("Intelagard") and states as follows:

## INTRODUCTION

1.      CSMI – a service-disabled veteran-owned business – brings this action to recover amounts owed by Intelagard for services performed by CSMI. From August 2018 to September 2021, CSMI provided field support services to Intelagard in connection with Intelagard's subcontract with Advanced Technology International ("ATI") and as part of ATI's prime contract with the U.S. Army. ATI paid Intelagard, but Intelagard did not pay CSMI all amounts owed ($99,163.60). Intelagard does not dispute the amount owed to CSMI and has regularly reaffirmed this debt. In fact, as recently as May 16, 2024, Intelagard's Chief Operating Officer explained: "[a]s I have stated before, it is our responsibility and intent to pay all outstanding invoices to CSMI in full!" But for nearly three years, Intelagard has promised to make payment in full, pleading with CSMI for patience while it allegedly attempted to identify funds to pay CSMI. Instead of honoring its obligations, Intelagard has strung CSMI along with excuses and unfulfilled promises.

After exhausting reasonable efforts to obtain payment from Intelagard, CSMI now brings this action to recover all amounts owed.

## PARTIES

2.      CSMI LLC is a limited liability company that is organized and existing under the laws of Delaware with its principal place of business at 14 Stiles Road, Suite 201, Salem, New Hampshire 03079.   CSMI has two members: Randall Kaminsky and Michael Thompson. Kaminsky is a resident and citizen of Helena, Montana.  Thompson is a resident and citizen of Belleair, Florida.

3.      On information and belief, Intelagard, Inc., is a corporation that is organized and existing under the laws of Colorado with its principal place of business at 3101 Industrial Lane, Unit C, Broomfield, Colorado 80020.

## JURISDICTION

4.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

## VENUE

5.      Venue is proper in the District of New Hampshire pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in New Hampshire.

## FACTS

### CSMI and Intelagard

6.      CSMI provides management solutions and regional capability in support of the defense and security of critical infrastructure and provides direct support to the U.S. military across operational environments globally.  CSMI provides program management, technical services and integrated logistics support for command, control, communications, computers, cyber, intelligence surveillance and reconnaissance, antiterrorism force protection, asset protection, and related technologies.

7.     CSMI was founded, and led, by two U.S. military veterans: Chief Executive Officer Randall Kaminsky and Chief Operating Officer Michael Thompson.

**CSMI Provide Services to Intelagard**

8.     Intelagard manufactures chemical and biological agent decontamination systems. Intelagard's systems are used by first responders, fire fighters, and military personnel.

9.     In 2016, ATI entered into a prime contract with the U.S. Army as part of the effort by the U.S. government's Joint Project Manager for Medical Countermeasure Systems to provide the nation and U.S. military forces safe, effective, and innovative medical solutions to counter Chemical Biological Radiological and Nuclear threats.  A true and accurate copy of the contract is attached as **Exhibit 1**.

10.     In connection with the prime contract with the U.S. Army, ATI entered into a subcontract with Intelagard.  Under this subcontract, Intelagard agreed to design, manufacture, and evaluate chemical decontamination systems to potentially replace ageing legacy systems.

11.     To support Intelagard's contract with ATI, Intelagard contracted with CSMI to provide field service representative support for Intelagard's systems in the U.S. and South Korea. CSMI's services included testing and evaluation support and system integration at Intelagard's facility in Colorado and at the U.S. Army's Dugway Proving Ground in Utah.  CSMI also provided maintenance of Intelagard chemical and biological decontamination systems and trained U.S. military personnel stationed at Camp Humphries in South Korea.

**Intelagard Fails to Pay CSMI**

12.     CSMI provided services to Intelagard between August 23, 2018 and September 30, 2021.

13.     On July 30, 2018, CSMI received the first of three purchase orders from Intelagard to provide field service representative support to Intelagard.  A true and accurate copy of the

3

purchase orders forming the underlying contract and total invoiced amount is attached as **Exhibit 2**.

14.    In August 2021, CSMI sent Intelagard an invoice in the amount of $66,081.80.  A true and accurate copy of the invoice is attached as **Exhibit 3**.

15.    In September 2021, CSMI sent Intelagard an invoice the amount of $66,081.80.  A true and accurate copy of the invoice is attached as **Exhibit 4**.

16.    As of September 2021, Intelagard owed CSMI a total $132,163.60.

17.    On September 28, 2021 Adrian Van Ineveld (Chief Financial Officer of Intelagard) emailed Kaminsky promising payment.  Van Ineveld stated in relevant part:

> Intelagard will pay CSMI's June [2021] invoice as soon as we get paid by ATI for our September invoice, which will be submitted to ATI on September 30th. The remaining three CSMI invoices for July, August and September [2021] will be paid as soon as we are able, based on cash we have coming in the next two months.  In order to expedite future payments, I will make them all by wire transfer rather than by check.

A true and accurate copy of the email is attached as **Exhibit 5 at 2**.

18.    On October 1, 2021, Dennis Smagac (President of Intelagard) praised CSMI for the services CSMI performed under its contract with Intelagard.  In an email to Kaminsky, Thompson, and others at CSMI, Smagac explained:

> Thomas [Hinton (CSMI)] and Thomas [Gladden (CSMI)], thank you both for helping us out and making us look so good!
>
> We're truly honored to know you both and we can't thank you enough . . . for taking such great care of these units, training all the different teams you interfaced with, meeting with Generals, putting up with wet/rainy/ cold/snowing, drive you crazy weather/being away from family members for months at a time/ going through the COVID quarantine nightmares and much more.  Randy [Kaminsky], Chris [Knox (CSMI)] and Mike [Thompson], thank you for providing the right guys to do the job and for helping us become a world class solution for the Gmen we serve!
>
> Exceeding the operational needs with needed equipment is one thing, combined with maintaining the equipment, training the different teams that rotate in on a

regular basis, maintaining spare parts, dealing with a Pandemic and more is epic! Teamwork!

. . . .

It's a humbling moment when anyone can be a part of a project that will have a positive effect for both current and future Decon teams for decades to come within the US Department of Defense Decon and Hazmat teams.

It's rare to meet true Americans/Patriots, who have dedicated their lives to keeping our country (and others) free and safe.  We have been honored to not only meet you guys and work with you, but to also become your friends.

TEAMWORK!

You're all the best!!!

A true and accurate copy of the email is attached as **Exhibit 6 at 1-2**.

19.    Intelagard did not make any payment as promised following Van Ineveld's September 21, 2021 email and Dennis Smagac's October 1, 2021 email.

20.    On February 11, 2022, Kaminsky sent an email to Van Ineveld asking about the status of payments.  Kaminsky explained: "As I'm sure you understand, we are a small business and have commitments we must meet."  A true and accurate copy of the invoice is attached as **Exhibit 7 at 2**.

21.    On March 9, 2022, Kaminsky sent an email to Van Ineveld reminding him of amounts owed.  Kaminsky explained:

Our employees did an excellent job representing Intelagard for the US Army Customer, for which Intelagard has been fully reimbursed.  It is now becoming increasingly difficult to meet our commitments without receipt of these payments.

A true and accurate copy of the invoice is attached as **Exhibit 8 at 1**.

22.    That same day, Kaminsky spoke with Dennis Smagac by phone.  Dennis Smagac assured Kaminsky that Intelagard would make payment in full.  It did not.

23.    On June 7, 2022, Intelagard made a partial payment  to CSMI in the amount of $33,000.  With this payment, the balance owed by Intelagard to CSMI was $99,163.60.

24.    On January 21, 2023, Kaminsky emailed Dennis Smagac to address the issue of non-payment.  Kaminsky explained: "We are now beyond 476 days on invoices from 2021, which were payable NET 30 [days].  We understand that there is a downturn that you're dealing with, as are we here at CSMI.  We are requesting at the very least a partial payment, which was recently promised but never received."  A true and accurate copy of the email is attached as **Exhibit 9 at 1**.

25.    Intelagard did not respond to Kaminsky's January 21, 2023 email.  Intelagard did not make any payment to CSMI.

26.    On July 21, 2023, Kaminsky emailed Bill Mengel (Intelagard Board of Directors) about the amounts outstanding to CSMI.  Kaminsky explained:

Bill,

Thank you for taking time out to speak with Brad Perkins [President, EZ-Consulting, LLC and the Intelagard Project Manager] on our behalf.  As Brad outlined during your call, CSMI provided high level support to Intelagard in Denver, Colorado, Dugway Proving Grounds, Utah and in South Korea.  CSMI service and support for Intelagard's HMDS program included:

• System integration/fabrication
• Test & evaluation support
• Comprehensive Integrated Logistics Support
• Freight forwarding and customs clearance
• Customer training
• Maintenance and repair
• Metrics reporting
• System retrofit and modification
• Exercise support

The bulk of these services took place in South Korea with an overall period of performance from 8/23/18 through 9/30/21.  Our team maintained the HMDS systems in a high degree of operational readiness, surpassing the expectations of the US Army customer.  CSMI's team specifically received multiple accolades from Joe Novack at the JPEO-CBRND Program office.  Our team made a significant impact on the Intelagard HMDS systems receiving high marks for performance and reliability in the field.

> As you know, Intelagard was paid on time by ATI for our program support. Intelagard did not pay the last two invoices for our services but instead, made the decision to allocate those funds to some other endeavor.  Attached is the aging report showing the two invoices to be 657 and 615 days old as of today.  Also attached are the two outstanding invoices that show the periods of performance.

A true and accurate copy of the email is attached as **Exhibit 10 at 1**.

27.     Mengel responded by email on July 23, 2023.  He explained: "Randy, Thank you for the background information and documentation on the outstanding Intelagard invoices.  I will raise this matter with Intelagard senior management."  A true and accurate copy of the email is attached as **Exhibit 10 at 1**.

28.     On August 4, 2023, CSMI again sent an email to Dennis Smagac following up on the payment status to CSMI for the two unpaid invoices totaling $99,163.60.  A true and accurate copy of the email is attached as **Exhibit 11 at 4**.

29.     Dennis Smagac replied on August 6, 2023, stating: "We're doing all that we can to get you paid.  We continue to work on multiple projects that are due to close any time."  A true and accurate copy of the email is attached as **Exhibit 11 at 1**.

30.     On September 14, 2023, Kaminsky emailed Dennis Smagac and Van Ineveld requesting payment.  Kaminsky stated: "Please advise where we stand with these invoices.  One of them is 720 days overdue.  We have refrained from taking the legal route because we want to continue to preserve the relationship."  A true and accurate copy of the email is attached as **Exhibit 12 at 2-3**.

31.     Dennis Smagac replied on September 20, 2023.  He stated that "we finally got some good news" and he proceeded to explained that Intelagard had secured a contract with the Ministry of Defense for Taiwan.  He further explained: "We can start paying down the balance with a portion of the down payment as soon as this happens which should be within the next 3 weeks. I'll have more details for the timing of the monies coming in the next few days."  He ended his

email by stating: "I can't do anything yet but to say I'm sorry for all this to go for so damm [sic] long.  I'll get back as soon as it hits."  A true and accurate copy of the email is attached as **Exhibit 12 at 1**.

32.    Intelagard did not make any payments and it did not offer details for future payments as it promised.

33.    Kaminsky emailed Dennis Smagac on November 9, 2023 stating: "Please update us on the Taiwan MOD [Ministry of Defense] order that you wrote to us about on 20 Sep [2023] in the email string below, and when CSMI can expect payment."  A true and accurate copy of the email is attached as **Exhibit 13 at 1**.

34.    Dennis Smagac replied to Kaminsky later that day.  He explained:  "The contract was due to drop on the 25th of last month [October 2023].  We're told that it will come any time now.  We're talking with our guys later today to get the update or good news.  I'll let you know what news we get."  A true and accurate copy of the email is attached as **Exhibit 13 at 1**.

35.    Intelagard did not make any payments to CSMI following Dennis Smagac's November 9, 2023 email and it did not provide any further updates to CSMI.

36.    In addition to the emails described above, Kaminsky regularly spoke with Intelagard representatives in 2022 and 2023, and Intelagard regularly promised payment in full. Intelagard did not dispute that CSMI performed all required services and that Intelagard owed CSMI the full amount of $99,163.60.

37.    On January 18, 2024, counsel for CSMI sent a letter to Dennis Smagac, Shelly Smagac (Chief Operating Officer for Intelagard), and Van Ineveld.  CSMI counsel's letter explained:

> CSMI issued to Intelagard an August 31, 2021 invoice (No. 083121-INT) in the amount of $66,081.80, and a September 30, 2021 invoice (No. 093021-INT) in the

amount of $66,081.80. Intelagard's last payment to CSMI was on June 7, 2022, in the amount of $33,000.00, which was a partial payment of the August 2021 invoice. Intelagard's remaining balance is $99,163.60.

CSMI's counsel requested that Intelagard make payment of $99,163.60 to CSMI by January 31, 2024. A true and accurate copy of the letter is attached as **Exhibit 14**.

38.     On January 31, 2024, Shelley Smagac sent a letter to CSMI's counsel stating that Intelagard was seeking an investment from which Intelagard would make payment to CSMI. She stated: "Intelagard is in the process of seeking outside investment to support the growth of our business. The investment sought by Intelagard in discussions with investors will give us the resources to address CSMI LLC invoices. Intelagard should have a clear definition of future investment by February 20, 2024." A true and accurate copy of the letter is attached as **Exhibit 15**.

39.     Following the January 31, 2024 letter, Intelagard did not make payment to CSMI and it did not provide the promised update by February 20, 2024.

40.     On February 21, 2024, counsel for CSMI sent a letter to Intelagard seeking an update on the investments noted in their January 31, 2024 letter and requesting that Intelagard make payment by February 27, 2024. A true and accurate copy of the letter is attached as **Exhibit 16**.

41.     Intelagard did not make payment by February 27, 2024.

42.     Intelagard sent CSMI periodic updates that they were in the process of securing money from an investor. On March 12, 2024, Shelley Smagac emailed CSMI counsel (subject: Update on CSMI debt) and stated:

> Intelagard was informed on Monday, March 11, 2024 by the investor that his funds were in the process of being cleared. He told me that this could take up to 10 business days. After the funds are available it should take a week to complete our agreement with the investor. The investor and Intelagard have agreed on the

amount and general terms and conditions.  The amount and use of funds, including paying CSMI their invoice in full, have been agreed to by the investor.

The investor, the amount and the source of his funds are confidential.  However, the funds will be cleared by one of the four major U.S. banks.  Intelagard has known the investor for over 15 years and worked with him on earlier projects.  We are satisfied with his investment offer and comfortable with his assurances of the investment.

I will update you each week as the investment moves forward . . . .

A true and accurate copy of the email is attached as **Exhibit 17 at 2**.

43.     On March 21, 2024, Shelley Smagac emailed CSMI's counsel: "I will contact our investor.  He may have to contact overseas (where the money currently is) to check status there.  I will try to get back to you later today, but at the latest by Monday noon."  A true and accurate copy of the email is attached as **Exhibit 17 at 1**.

44.     On March 25, 2024, Shelley Smagac emailed CSMI's counsel with another update.  She explained: "We heard from our investor that he anticipates the money clearance today or tomorrow.  After that happens, he anticipates that because of the size of the investment that is coming in, it will take approximately a week or so for the funds to be processed.  We will keep you posted!  Thank you for your patience." A true and accurate copy of the email is attached as **Exhibit 17 at 1**.

45.     On April 23, 2024, Shelley Smagac again emailed CSMI's counsel.  She stated:

The transaction is progressing toward completion.  The involved parties are in London and Florida.  The transaction revolves around a Brazilian citizen using a Brazil financial instrument.  Approvals of all involved country Treasury officials have been received.  The final agreement is with the parties' legal teams for final review.  The timing of the review of the final agreement is not set yet.  At this point there are no apparent obstacles as the parties have reviewed and commented on the draft agreements previously.  Hopefully there are no new questions raised by the legal teams.  Given past experience of our investor, the transaction and the transfer of funds should be completed within two weeks.

A true and accurate copy of the email is attached as **Exhibit 18 at 1**.

46.     On May 6, 2024, Shelley Smagac emailed CSMI's counsel.  She stated:

> We got an update late last week from the investor.  Two particular transactions are being completed with the transfer of the financial instruments (not cash) to major banks in Europe – one in London and one in Paris.  It should only take a short time to process the instruments and have funds available in the accounts being established to complete the transactions.  Written confirmation should be available to the parties this week.

A true and accurate copy of the email is attached as **Exhibit 19 at 1**.

47.     On May 16, 2024, Shelley Smagac sent CSMI counsel an email in which she

acknowledged Intelagard's responsibility to pay CSMI in full.  She stated:

> At this point in time, the funds have been received by three European banks (in London, Switzerland and Paris – HSBC, UBS and BNT).  As the amounts of these funds total billions of dollars, the banks want to split up payments to the investor.  He doesn't know what steps are involved in this process, but will let us know as soon as he does.  We will let you know immediately once we have more information.
>
> We heartfully appreciate your working with us on this.  **As I have stated before, it is our responsibility and intent to pay all outstanding invoices to CSMI in full!** (emphasis added).

A true and accurate copy of the email is attached as **Exhibit 20 at 1**.

48.     On May 20, 2024, counsel for CSMI emailed Shelley Smagac asking for a

definitive date by which Intelagard would make payment in full.  The email stated:

> CSMI is entitled to payment in full and it should not have to endure any further delays.  I first wrote to you on Jan. 18, 2024 about the $99,163 that Intelagard owes to CSMI.  While you've provided periodic updates about the status of a pending investment, Intelagard has not provided a specific date by which it will make payment in full.  CSMI appreciates that it may take time to secure an investment.  But payment to CSMI of long-overdue amounts should not be conditioned on Intelagard securing a future investment, particularly given the numerous and varied delays over the past four months.  This has gone on too long.  Please provide a definite date by which Intelagard will make payment in full to CSMI.

A true and accurate copy of the email is attached as **Exhibit 21 at 1-2**.

49.     On May 22, 2024, Shelley Smagac emailed CSMI's counsel and stated that

Intelagard continued to work through its investment and that it would provide a "definitive answer"

about payment in two days.  She stated:

> The investor's funds in bank accounts overseas are to be released today, May 22, 2024.  We will be informed by this Thursday of the availability of funds and amounts.  On this basis, we will be in a position to provide a definitive answer on Friday morning as to our ability to pay on a specific date.

A true and accurate copy of the email is attached as **Exhibit 21 at 1**.

50.     On May 24, 2024, Shelley Smagac emailed CSMI's counsel and explained:

> The release of the bank accounts did not happen on Wednesday, as expected. Continued procedural matters in dealing with establishing a number of accounts in different banks across three European countries and their banking regulatory systems have presented difficulties.  Even the investor himself cannot provide a firm date at this point in time.
>
> In the interest of offering you more detail for your client, it is appropriate to say that after the accounts are established and released there will be additional time required for negotiations and the actual transfer of funds to Intelagard in tranches still to be determined. . . . Again, we greatly appreciate your and your client's patience in this matter.  It has indeed been a prolonged process, but we have utmost faith that we will be able to reach a mutually satisfactory resolution.

A true and accurate copy of the email is attached as **Exhibit 22 at 1**.

51.     On June 13, 2024, Shelley Smagac explained: "the initial funds are in the bank accounts.  The agreements with the joint venture partners are complete.  The next step is for the partners to transfer their [stand-by letters of credit] to the banks involved."  She explained that the investor "asks for patience as banks in now six countries are involved as are regulatory agencies, including all the Central Banks in key countries, including the U.S."  A true and accurate copy of the email is attached as **Exhibit 23 at 5**.

52.     On June 24, 2024, Shelley Smagac explained that "the trading program is being entered tomorrow (Tuesday).  Once the investor is in the trading program he will be able to provide greater detail on the timing of returns which, including the initial payment, should be in less than a month. . . .  Thank you for your patience as well as that of CSMI!"  A true and accurate copy of the email is attached as **Exhibit 23 at 3-4**.

53.    On July 1, 2024, Shelley Smagac emailed to provide details on the "trading program" and explained that "it appears the source of funds is moving forward." A true and accurate copy of the email is attached as **Exhibit 23 at 2**.

54.    On July 10, 2024, Shelley Smagac provided an update on her communications with the investor. She explained: "I keep asking the investor for a timetable. But he is unable to give me one because of the confidentiality of the details of the trading program, which are not in the public domain and the platforms for trading are themselves outside the U.S." She further explained that "based on what I am told I am uncomfortable projecting a date, as you ask, when funds for CSMI will be available." A true and accurate copy of the email is attached as **Exhibit 23 at 1**.

55.    Under its contract with CSMI, Intelagard owes $99,163.60. ATI paid Intelagard, but Intelagard has not made payment in full to CSMI. For almost three years, Intelagard has unequivocally reaffirmed its liability, including as recently as May 2024 when it acknowledged Intelagard's "responsibility and intent to pay all outstanding invoices to CSMI in full!" After being strung along by Intelagard for nearly three years, CSMI is entitled to payment in full and other damages.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

56.    CSMI incorporates Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.    CSMI has a valid and enforceable written contract in the form of the three purchase orders.

58.    CSMI has fulfilled all of its material obligations under the purchase orders agreements in providing the field service support.

59.     The invoices provide for payment for services rendered in the total amount of $99,163.60.

60.     The invoices require Intelagard to pay for services received within 30 days of when the invoice is received.

61.     Intelagard's failure to pay for services rendered is a breach of their agreement with CSMI.

62.     Intelagard has not made any payments to CSMI since June 7, 2022.

63.     CSMI has been damaged by the Intelagard's breach in the principal amount of $99,163.60, in addition to other damages (including, without limitation, its attorneys' fees).

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

64.     CSMI incorporates Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

65.     In every New Hampshire contract is a covenant of good faith and fair dealing which limits the discretion of a party to deny the other party the intended benefits of the bargain.

66.     The invoices require Intelagard to pay for services received within 30 days of when the invoice is received.

67.     Intelagard's failure to pay for services rendered is a breach of their agreement with CSMI.

68.     Intelagard's stringing along of CSMI since 2021, and making numerous promises that they would make payment, is a breach of the covenant of good faith and fair dealing.

69.     Intelagard was paid by the U.S. Army's prime contractor ATI for services that CSMI provided to Intelagard.

70.     Intelagard has failed to pay CSMI for all amounts owed to CSMI.

14

71.     As a proximate cause of Intelagard's actions, CSMI has suffered and will suffer direct and consequential damages in the amount to be determined at trial.

## COUNT III
### Unjust Enrichment / Quantum Meruit

72.     CSMI incorporates Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

73.     CSMI has rendered and delivered valuable services to Intelagard.

74.     Intelagard was aware that CSMI expected to be compensated for the services provided at Intelagard's request.

75.     Intelagard accepted all of CSMI's services and does not dispute that they were rendered.

76.     Intelagard was paid by the U.S. Army's prime contractor ATI for services that CSMI provided to Intelagard.

77.     Intelagard has refused to pay CSMI for the amounts owed to CSMI.

78.     As a direct and proximate cause of Intelagard's enrichment and quantum meruit described herein, CSMI has been injured in an amount to be determined at trial including, but not limited to, the value of the services provided by CSMI to Intelagard.

## COUNT IV
### Unfair & Deceptive Trade Practices under the N.H. Rev. Stat. Ann. § 358-A:2

79.     CSMI incorporates Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

80.     CSMI has rendered and delivered services to Intelagard.

81.     Intelagard was aware that CSMI expected to be compensated for the services provided at Intelagard's request.

82.     Intelagard accepted all of CSMI's services and does not dispute that they were

rendered.

83.     Intelagard was paid by the U.S. Army prime contractor ATI for services that CSMI provided to Intelagard.

84.     Intelagard has failed to pay CSMI for the amounts owed to CSMI.

85.     Intelagard induced CSMI to provide services with no intention of paying CSMI.

86.     Intelagard has engaged in unfair and deceptive trade practices in the false, misleading or deceptive promises to pay CSMI  for services rendered and engaging in a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.

87.     It would be harmful to commerce in New Hampshire to condone the unethical and unscrupulous activity of Intelagard.

88.     As a direct and proximate cause of Intelagard's unfair and deceptive trade practices, CSMI has been injured in an amount to be determined at trial.

## JURY TRIAL DEMAND

CSMI hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, CSMI LLC respectfully requests this Court:

A.     Enter judgment in favor of CSMI against Intelagard on all claims;

B.     Award CSMI money damages in an amount to be determined at trial, including, without limitation, treble damages pursuant to N.H. Rev. Stat. Ann. § 358-A:10;

C.     Award CSMI its expenses and costs, including, without limitation, reasonable attorneys' fees pursuant to N.H. Rev. Stat. Ann. § 358-A:10;

D.     Award CSMI pre-judgment and post- judgment interest; and

E.     Grant any such and further relief that justice and equity may require.

Respectfully submitted,

CSMI LLC

By its attorneys,


*/s/ W. Scott O'Connell*
W. Scott O'Connell (N.H. Bar No. 9070)
David J. Santeusanio (*pro hac vice pending*)
James S. Lockett (*pro hac vice pending*)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel.: (617) 573-5860
Fax.: (617) 878-1542
*scott.oconnell@hklaw.com*
*david.santeusanio@hklaw.com*
*james.lockett@hklaw.com*

Dated: April 9, 2025


## CERTIFICATE OF SERVICE

I, W. Scott O'Connell, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on April 9, 2025.


*/s/ W. Scott O'Connell*
W. Scott O'Connell