```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

CSMI, LLC

    v.                                                Case No. 24-cv-235-SM-TSM
                                                      Opinion No. 2025 DNH 069

Intelagard, Inc.

## O R D E R

Defendant Intelagard, Inc. moves to dismiss the complaint filed against it by CSMI, LLC for improper venue under Federal Rule of Civil Procedure 12(b)(3), based on a forum selection clause in the "Teaming Agreement" between the parties. CSMI opposes the motion, arguing that the cited forum selection clause does not apply to the claims in this case. For the reasons that follow, Intelagard's motion to dismiss is denied.

Despite moving to dismiss for improper venue, in the "Overview" section of its memorandum, Intelagard makes statements that appear to be aimed at personal jurisdiction. Intelagard, however, did not cite Federal Rule of Civil Procedure 12(b)(2), develop a defense of lack of personal jurisdiction, cite pertinent authority, or even mention personal jurisdiction in the body of the memorandum in support of the motion to dismiss.[1] Intelagard also appears to conflate personal

---

[1] Despite Intelagard's minimal reference to personal jurisdiction, CSMI addressed the issue in depth and demonstrated that Intelagard's contacts with CSMI in New Hampshire for

jurisdiction and subject matter jurisdiction, which are entirely separate issues.  Given the lack of a developed and coherent argument challenging personal jurisdiction, that defense is waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Flanders v. Mass Resistance, No. 1:12-CV-00262-JAW, 2013 WL 2237848, at *10 (D. Me. May 21, 2013) (holding that defense of personal jurisdiction was waived where defendants suggested they lacked minimum contacts with the forum but failed to provide any developed argument).

## Standard of Review

Venue is reviewed under different standards, depending on the circumstances of the case.  When a valid forum selection clause requires a federal forum, the court determines venue under 28 U.S.C. § 1404(a).  Atlantic Marine Constr. Co. v. U.S. District Court for the W. District of Tex., 571 U.S. 49, 60 (2013).  On the other hand, if "a forum-selection clause is alleged to require reference to a state or foreign forum, the appropriate way for a federal court to enforce it is through a motion to dismiss for forum non conveniens."  Rivera v. Kress

---

purposes of their contractual relationship support specific personal jurisdiction.  Doc. no. 40, at 21-26.

Stores of Puerto Rico, Inc., 30 F.4th 98, 101-02 (1st Cir. 2022); Garcia v. 21st Century Techs. Grp., LLC, --- F. Supp. 3d ---, No. 24-CV-11106-DLC, 2025 WL 1030167, at *1 (D. Mass. Apr. 7, 2025). Intelagard contends that the forum selection clause here requires that the case be brought in "Boulder County, in the State of Colorado," which apparently refers to a Colorado state court.[2] Courts in the First Circuit address a forum selection clause, requiring a state court forum, under the standard used for Federal Rule of Civil Procedure 12(b)(6). Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 30 (1st Cir. 2022); Claudio-De León v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014).

For purposes of a motion to dismiss under Rule 12(b)(6), the court takes "as true all well-pleaded facts alleged in the proposed amended complaint, drawing all reasonable inferences in the pleader's favor." Amyndas Pharms. 48 F.4th at 24. In addition, the court "may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint." Rivera, 30

---

[2] The cited forum selection clause also provides that the parties "consent and agree to personal jurisdiction and venue of any state or federal court of competent jurisdiction in the State of Colorado." Doc. no. 39-2, at 8-9. Intelagard does not rely on that part of the forum selection clause, however.

3

F.4th at 102. Both parties submitted extrinsic documents, without objection, which the court considers because their authenticity is not disputed. See Garcia-Gesualdo v. Honeywell Aerospace of P.R., Inc., 135 F.4th 10, 13 (1st Cir. 2025).

Background

As alleged in the amended complaint, CSMI and Intelagard provide certain services to the military, along with other customers. "CSMI provides management solutions and regional capability in support of the defense and security of critical infrastructure and provides direct support to the U.S. military across operational environments globally." Doc. no. 36, ¶ 6. More specifically, "CSMI provides program management, technical services and integrated logistics support for command, control, communications, computers, cyber, intelligence surveillance and reconnaissance, antiterrorism force protection, asset protection, and related technologies." Id. "Intelagard manufactures chemical and biological agent decontamination systems, [and] Intelagard's systems are used by first responders, fire fighters, and military personnel." Id., ¶ 8.

In 2016, the United States Army was part of a government project "to provide the nation and U.S. military forces safe, effective, and innovative medical solutions to counter Chemical Biological Radiological and Nuclear threats." Id., ¶ 9. The

Army contracted with Advanced Technology International ("ATI") for that project.  Id.  Intelagard knew of the project, expected to receive a solicitation "for acquisition and fielding of decontamination systems," and intended to submit a proposal in response.  Doc. no. 39-2, at 1.  Intelagard, entered a "Teaming Agreement" with CSMI, dated October 17, 2017, to respond to the expected solicitation for a project proposal.  Id.

The Teaming Agreement provided that Intelagard was "undertaking, on its own behalf and at its own cost, bid and proposal efforts to obtain a prime contract as the result of the Solicitation."  Id.  Similarly, CSMI was "undertaking, on its own behalf, and at its own cost, bid and proposal efforts to obtain a subcontract under any awarded prime contract."  Id.  For purposes of the Teaming Agreement, "neither Party is selling supplies or services to the other in exchange for payment."  Id.

Intelagard bore the ultimate responsibility "for the content, preparation and submission of the Proposal to the Customer as well as team composition."  Id., at 2.  CSMI was expected to assist Intelagard in preparing the proposal.  Id.  The Teaming Agreement also provided specific responsibilities for CSMI, which included furnishing "all properly coordinated proposal materials, information and data pertinent to the work assigned to it."  Id.  In the event Intelagard was awarded a prime contract, the Teaming Agreement required the parties to

5

"undertake reasonable efforts to enter into a subcontract for that portion of the work assigned to [CSMI]." Id., at 4. That work would be done "at a price and other terms and conditions to be mutually agreed upon between the Parties." Id.

Under its terms, the Teaming Agreement remained in effect until the first of fifteen possible events occurred, which included the award of a prime contract to Intelagard and execution of a subcontract between the parties. Id. at 6. Certain provisions of the Teaming Agreement were to survive its termination, including a forum selection clause. The forum selection clause provides:

> Any dispute, claim, action or suit arising out of or relating to this Agreement may only be brought exclusively in a court of competent jurisdiction in Boulder County, in the State of Colorado; and the Parties hereby consent and agree to personal jurisdiction and venue of any state or federal court or [sic] competent jurisdiction in the State of Colorado with respect to any such dispute, claim, action or suit and waive any defense or objection to the exercise of personal jurisdiction and/or venue of such court.

Doc. no. 39-2, at 8-9.

As the parties anticipated, ATI contracted with Intelagard "to design, manufacture, and evaluate chemical decontamination systems to potentially replace ageing legacy systems." Doc. no. 36, ¶ 10. Intelagard then issued two Statements of Work, along with Purchase Orders, to CSMI to subcontract "installation and integration efforts and a portion of the test support to SCMI"

6

on the ATI contract. Doc. no. 41, at 19 & 27. CSMI agreed "to provide field service representative support for Intelagard's systems in the U.S. and South Korea. CSMI's services included testing and evaluation support and system integration at Intelagard's facility in Colorado and at the U.S. Army's Dugway Proving Ground in Utah." Id., ¶ 11; see also Purchase Order/Statement of Work, doc. no. 41, at 19 & 27.

CSMI provided the agreed services between August of 2018 and September of 2021 under Intelagard's Statements of Work and Purchase Orders. Id., ¶¶ 12-13. CSMI sent Intelagard invoices in August and September of 2021 for the services performed under the purchase orders. Intelagard's chief financial officer emailed Randall Kaminsky, one of the two owner/members of CSMI, at the end of September 2021, and promised payment when ATI paid Intelagard.

Intelagard, however, did not make any payment on the amount due, despite communications that Intelagard was completely satisfied with the work and acknowledged the amount owed. When years passed without payment, CSMI brought suit against Intelagard, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment or quantum meruit, and violation of New Hampshire's Consumer Protection Act, RSA 358-A:2.

7

## Discussion

Intelagard moves to dismiss the claims, arguing that the forum selection clause in the Teaming Agreement requires the claims be brought in Colorado. CSMI objects, arguing that the forum selection clause does not apply because the Teaming Agreement and the agreement under the Statements of Work and Purchase Orders are separate agreements and none of CSMI's claims arise out of or relate to the Teaming Agreement. The court agrees that the forum selection clause does not apply to CSMI's claims in this case.

"Where, as here, a federal court is asked to enforce a forum-selection clause, federal common law supplies the rules of decision." Amyndas Pharms., 48 F.4th at 30-31. "Under federal common law, a contract must be read in accordance with its express terms and the plain meaning thereof," giving the terms "their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." Id. (internal quotation marks omitted). "Even so, an inquiring court must avoid tunnel vision: instead of focusing myopically on individual words, it must consider contractual provisions within the context of the contract as a whole." Id.

A. Teaming Agreement

Intelagard contends that the parties never entered a subcontract, as was anticipated in the Teaming Agreement, and, for that reason, the Teaming Agreement remained the only contract between them. In making that argument, however, Intelagard ignores the Statements of Work and Purchase Orders for CSMI's work on the ATI contract. See, e.g., SmartSky Networks, LLC v. DAG Wireless, LTD., 93 F.4th 175, 178 (4th Cir. 2024) (noting that the parties' business relationship "was governed by several agreements in the form of statements of work, purchase orders and a Teaming Agreement"); Aleron Gr., LLC v. Ferguson, 2023 WL 4850166, at *2-*3 (E.D. Va. July 28, 2023) (reciting facts demonstrating the interplay between a Teaming Agreement and a subsequent statement of work contract).

As provided above, the Teaming Agreement covered the relationship between Intelagard and CSMI for purposes of developing a proposal to submit to ATI for the Army project. The Teaming Agreement expressly did not cover selling supplies or services or paying for supplies and services and did not provide terms for CSMI's work if and when ATI awarded Intelagard the contract for the Army project. The Agreement stated that if Intelagard were awarded the ATI contract, the parties would then agree to a subcontract, which would provide the terms and conditions for CSMI's work. The Teaming Agreement terminated

9

when Intelagard was awarded the ATI contract and Intelagard and CSMI agreed to terms for CSMI to provide services in support of that contract in the form of the Statements of Work and Purchase Orders.

Intelagard makes no argument and cites no authority to show that the Statements of Work and Purchase Orders are not valid agreements. Further, for purposes of the current motion to dismiss, there is no dispute that CSMI satisfactorily performed all of the work as agreed under the Statements of Work and Purchase Orders. Intelagard also fails to explain how the terms of CSMI's work on the ATI contract were part of the Teaming Agreement, particularly in light of the Agreement's express provisions to the contrary.[3] For these reasons, the court construes the Statements of Work and the Purchase Orders to be the subcontract between Intelagard and CSMI that was

---

[3] Intelagard states that CSMI's "tasks" that are billed in the unpaid invoices "easily fit the listed activities in Exhibit A [to the Teaming Agreement.]" Doc. no. 39-1, at 4. Exhibit A, however, provided the anticipated scope of work for CSMI under the "Program," if Intelagard were awarded the contract with ATI. While Exhibit A provides a proposed scope of work that might be incorporated into an anticipated future subcontract, it is not an agreement to provide services with stated terms. Instead, Exhibit A states: "[B]oth parties understand and agree that this Scope of Work is **only an overview of possible activities** to be performed under any resulting subcontract and that the scope of activities actually performed will be dependent on the Program contract as awarded." Doc. no. 49-1, at 11 (emphasis added). Therefore, Exhibit A does not provide contract terms for the work done by CSMI as a subcontractor for the ATI contract.

anticipated in the Teaming Agreement.  As a result, the Teaming Agreement terminated on July 30, 2018.[4]

### B.  Forum Selection Clause

Intelagard argues, nevertheless, that the forum selection clause applies to CSMI's claims because the forum selection clause survived the termination of the agreement.  See Doc. no. 39-2, at 6.  By its terms, however, the forum selection clause applies only to a "dispute, claim, action or suit arising out of or relating to" the Teaming Agreement.  As stated previously, the Teaming Agreement provided the terms for Intelagard and CSMI to work together toward the common goal of Intelagard being awarded a contract by ATI to work on the Army project.  The parties' teaming went as planned, without disputes, claims, actions, or suits, and ATI awarded Intelagard the contract for the Army project.  CSMI and Intelagard entered their subsequent subcontract under the Statements of Work and the Purchase Orders, which caused the Teaming Agreement to terminate.

Intelagard argues, nevertheless, that CSMI's claims arise from or are related to the Teaming Agreement because the parties would not have proceeded to their later relationship, in which

---

[4] As CSMI points out, the Teaming Agreement also provided that it would terminate one year from its effective date, on October 17, 2018.

CSMI performed services for Intelagard, if they had not first entered the Teaming Agreement.  A forum selection clause requirement that the claim arise from or relate to the agreement is limited to the rights or duties provided under that agreement.  <u>Berrey v. Evolve Cellular, Inc.</u>, 2023 WL 11199739, at *6 (D. Mass. Oct. 31, 2023); <u>Doe v. Seacamp Ass'n, Inc.</u>, 276 F. Supp. 2d 222, 228 (D. Mass. 2003).  CSMI seeks the amounts owed by Intelagard under the Statements of Work and Purchase Orders, as billed in the invoices.  As such, CSMI's claims arise from and relate to those agreements and do not arise from or relate to the Teaming Agreement.  As a result, the forum selection clause does not apply.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion to dismiss (doc. no. 39) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

June 2, 2025

cc:  Counsel of Record

12